UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OTTER PRODUCTS, LLC,

                Plaintiff,

-against-

4PX EXPRESS USA INC.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

23-CV-11111 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Otter Products, LLC ("Plaintiff") brings this action for damages and injunctive relief against 4PX Express USA Inc. ("Defendant") under the Lanham Act and Tariff Act. (Doc. 13, "FAC"). On January 31, 2025, the Court issued an Opinion and Order denying Defendant's motion to dismiss. (Doc. 51). Thereafter, contemporaneous with the filing of an Answer (Doc. 54), Defendant's counsel moved to withdraw as attorney (Doc. 55). The Court, on February 6, 2025, granted counsel's application and stayed the action for a period of thirty days to enable Defendant to obtain substitute counsel. (Doc. 56). The February 6, 2025 order explained that Defendant, a corporation, must obtain representation through a licensed attorney to appear in this case and the failure to do so may constitute grounds for entry of default judgment under Federal Rule of Civil Procedure 55. (*Id.*). On March 11, 2025, in light of Defendant's failure to comply with the Court's February 6, 2025 Order and appear through substitute counsel, the Court entered an Order deeming Defendant in default and granting Plaintiff leave to seek default judgment. (Doc. 59). A Clerk's Certificate of Default was entered on March 14, 2025. (Doc. 64).

    On May 23, 2025, Plaintiff moved for a default judgment, damages, and a permanent injunction against Defendant by way of an order to show cause, in accordance with this Court's Individual Practices. (*See* Doc. 66—Doc. 70). The Court, on May 27, 2025, issued an Order to Show Cause directing Defendant to explain by July 3, 2025, "why an order for default judgment

should not be issued. . . ." (Doc. 71). Plaintiff served the Order to Show Cause and supporting papers on Defendant on May 28, 2025 and June 5, 2025. (Doc. 72, Doc. 73).

As of the date of this Order, Defendant has neither appeared through counsel nor has it responded to the Order to Show Cause.

For the reasons set forth below, Plaintiff's motion is GRANTED.

## BACKGROUND

Plaintiff manufactures, distributes, and sells functional, durable, and award-winning personal electronics cases. (FAC ¶ 10). Plaintiff alleges that it owns various trademarks registered with the United States Patent and Trademark Office ("USPTO"). (*Id*. ¶ 12). "Defendant is the United States company of a China-based parent and acts as a global logistics storage, fulfillment, and transportation company," operating storage and shipping facilities across the United States. (*Id*. ¶ 17).

Plaintiff contends that Defendant is importing, storing, distributing, and using in interstate commerce merchandise bearing counterfeits and infringements of Plaintiff's registered trademarks. (*Id*. ¶ 18). Plaintiff, in 2021, sent two cease and desist letters, as well as emails, to Defendant, putting Defendant on notice of Plaintiff's claims of counterfeiting and trademark infringement. (*Id*. ¶ 25). On May 20, 2021, United States Customs seized 180 counterfeit products imported by Defendant. (*Id*. ¶ 26). On May 25, 2021, Plaintiff sued Defendant in this Court in an action bearing Docket Number 21-CV-04650 (the "Prior Action"), alleging the same conduct at issue in this action. (*Id*. ¶ 27). That action was voluntarily dismissed on May 25, 2022.[1]

---

[1] The Court may take judicial notice of court documents. *Singh v. Meadow Hill Mobile Inc.*, No. 23-CV-05379, 2025 WL 81372, at *3 n.1 (S.D.N.Y. Jan. 13, 2025); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (stating that courts may take judicial notice of court documents); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016) ("In deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents.").

Plaintiff regularly monitors for the sale of counterfeit product, and on or about September 28, 2023, discovered a suspicious listing on eBay. (*Id.* ¶¶ 28-29). Plaintiff's agent then made a straw purchase from that eBay seller of an "OtterBox" cellphone case. (*Id.* ¶ 29). Plaintiff reviewed that purchase and confirmed it was not authentic OtterBox merchandise and did, in fact, bear counterfeits and infringements of Plaintiff's registered trademarks. (*Id.* ¶ 30). The return address on the purchase was Defendant's address, and Defendant confirmed that it did ship the counterfeit product at issue. (*Id.* ¶¶ 31-32). Defendant advised that it had additional inventory from that seller as well as other accounts distributing a large amount of counterfeit product. (*Id.* ¶¶ 33-35). Plaintiff alleges, upon information and belief, Defendant continued to ship its customers counterfeited merchandise despite being on notice of the issue. (*Id.* ¶¶ 36-38).

Plaintiff presses five claims for relief against Defendant in the First Amended Complaint: (i) a trademark counterfeiting claim under 15 U.S.C. § 1114; (ii) a trademark infringement claim under 15 U.S.C. § 1114; (iii) a claim of unfair competition, false designation of origin, and false description under 15 U.S.C. § 1125(a); (iv) a federal trademark dilution claim under claim under 15 U.S.C. § 1125(c); and (v) a claim for unlawful importation of goods in violation of the Tariff Act, 19 U.S.C. § 1526(a). (*See generally* FAC).

## STANDARD OF REVIEW

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff's counsel complied with Rule 55(a) and Local Civil Rule 55.1, and the Clerk of Court accordingly issued a Certificate of Default against Defendant. (Doc. 64). Given Defendant's abandonment of its defense of this case and resulting default, the Court accepts the well-pled factual allegations in the First Amended Complaint as true

3

and draws all reasonable inferences in Plaintiff's favor. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).[2] The Court, however, does not accept blindly the allegations concerning damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). While an evidentiary hearing under Rule 55(b)(2) is not required, a plaintiff must establish through affidavits or other evidence "a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation marks omitted).

## ANALYSIS

I. <u>Damages</u>

Plaintiff seeks an award of damages against Defendant in the amount of $14,000,000. (Doc. 69 ¶ 32; Doc. 67). Specifically, Plaintiff requests statutory damages for infringement of seven of its registered trademarks in the amount of $2,000,000 per mark. (*Id.*). Plaintiff does not seek an award of attorneys' fees or costs. (Doc. 68 at 18-19).

Section 1117(c) of the Lanham Act provides that a prevailing plaintiff may recover statutory damages in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," unless the infringement was willful, in which case the court may award up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1)-(2). Plaintiff argues that it is required to elect statutory

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

damages because Defendant failed to disclose any records concerning its sales of counterfeit OtterBox products. (Doc. 68 at 12).

"District courts have wide discretion in awarding statutory damages under § 1117(c)." *Mattel, Inc. v. www.power-wheels-outlet.com*, No. 21-CV-08108, 2022 WL 2900763, at *2 (S.D.N.Y. July 22, 2022), *adopted by* 2022 WL 3159317 (S.D.N.Y. Aug. 8, 2022). "Because a key purpose of § 1117(c) is to provide a monetary remedy in cases of amorphous damage, courts assessing statutory damages must exercise discretion in examining whatever facts and considerations are available in a setting of limited information." *Id*.

"To determine an appropriate award of statutory damages under the Lanham Act, courts rely on seven factors: (1) expenses saved and profits reaped by the infringer/defendant; (2) the plaintiff's lost revenues; (3) the value of the trademark; (4) the need to deter other potential infringers; (5) whether the defendant's conduct was innocent or willful; (6) the cooperativeness of the defendant in providing records relevant to profits and losses; and (7) the need to deter the defendant from future misconduct." *Id*. at *3.

With respect to the first two factors, Plaintiff argues that Defendant failed to produce documents in discovery, including documents concerning the amount of counterfeit product distributed, and refused to appear for an in-person deposition. This left Plaintiff without information as to Defendant's expenses and profits or Plaintiff's lost revenues. Plaintiff has provided evidence that Defendant shipped thirteen counterfeit OtterBox products to Plaintiff after the commencement of this action, and from its review of the numerous sellers using Defendant's services on eBay, Plaintiff estimates that the number of counterfeit OtterBox products distributed by Defendant to be in the tens of thousands. (Doc. 69 ¶¶ 7, 21, 24). The Court "may draw upon

the 'inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range.'" *Mattel, Inc.*, 2022 WL 2900763, at *3.

With respect to the third factor, Plaintiff has not provided any objective evidence from which this Court could determine the value of its trademarks. "Where only limited evidence has been presented as to the value of a trademark, 'courts have made either neutral findings as to factor three, or have found that the factor weighs against a substantial damages award.'" *Otter Prods., LLC v. Hargrove*, No. 22-CV-07077, 2024 WL 3878285, at *3 (S.D.N.Y. July 26, 2024) (quoting *Mattel, Inc.*, 2022 WL 2900763, at *3), *adopted by* 2024 WL 3876366 (S.D.N.Y. Aug. 19, 2024). The Court finds the third factor to be neutral as to the question of whether a substantial damages award is warranted.

As regards the fourth factor, "the goal of deterring similar conduct by other enterprises requires a substantial award." *Id.* With respect to the fifth factor, Defendant is a willful infringer. Defendant distributed counterfeit products after the first lawsuit by Plaintiff and continued during this action. Defendant was warned by Plaintiff, by its customers, by United States Customs, by a judicial opinion, and in a third-party lawsuit, yet continued to distribute counterfeit OtterBox products. (Doc. 70 ¶ 10; Doc. 69 ¶¶ 11-16). After its motion to dismiss was unsuccessful and discovery commenced, Defendant defaulted and abandoned its defense in this action. By virtue of its default, Defendant is a willful infringer. *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12-CV-09190, 2013 WL 6481354, at *3 (S.D.N.Y. Dec. 3, 2013), *adopted by* 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014). The sixth factor also weighs in favor of a substantial award of damages, as Defendant has not provided any records relevant to its profits and losses that would have aided in the calculation of damages, and it refused to appear for a deposition, which can hardly be considered cooperative. *See Kelly Toys Holdings, LLC v. Guangzhou Lianqi Tech. Co., Ltd.*, No.

21-CV-08111, 2024 WL 1360919 at *5 (S.D.N.Y. Apr. 1, 2024), *adopted by* 2024 WL 1908435 (S.D.N.Y. May 1, 2024). The seventh factor—the need to deter Defendant from future misconduct—weighs heavily in favor of a substantial damages award because, despite Plaintiff's first lawsuit against it and despite the pendency of this lawsuit, Defendant continued to ship counterfeit products. *See Otter Products, LLC*, 2024 WL 3878285, at *4; *Kelly Toys Holdings, LLC*, 2024 WL 1360919, at *5.

An award of statutory damages under § 1117(c)(2) is therefore appropriate. Plaintiff seeks statutory damages of $2,000,000 per mark, or $14,000,000 total for seven registered trademarks. The Court has considered awards in analogous cases in this District and finds that an award of $125,000 per counterfeit mark would be consistent with those cases involving defaulting defendants where there is a lack of evidence as to the value of the trademarks at issue and the extent of the defendant's business, and "is a substantial award that accounts for the importance of general deterrence of other potential infringers and specific deterrence of [Defendant], who engaged in willful infringing conduct here." *Otter Products, LLC*, 2024 WL 3878285, at *5 (collecting cases).

Accordingly, Plaintiff is awarded statutory damages against Defendant in the total amount of $875,000.

II. <u>Injunctive Relief</u>

A court may grant a permanent injunction on a motion for default judgment in a case under the Lanham Act to prevent further violations of a plaintiff's trademark. 15 U.S.C. § 1116; *Otter Products, LLC*, 2024 WL 3878285, at *6. "The Court may issue a permanent injunction when a plaintiff has succeeded on the merits and has demonstrated that (1) it suffered irreparable harm; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance

7

of hardships between the parties warrants such a remedy; and (4) that the public interest would not be disserved by the issuance of an injunction." *3M Co. v. Performance Supply, LLC*, No. 20-CV-02949, 2023 WL 3481608, at *5 (S.D.N.Y. Apr. 26, 2023), *adopted by* 2023 WL 3480927 (S.D.N.Y. May 16, 2023).

"A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a [Lanham Act] violation . . ." 15 U.S.C. § 1116(a). "The loss of reputation and goodwill constitutes irreparable harm." *Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 44 (2d Cir. 2020). Plaintiff argues that its "goodwill, which has been achieved through decades of proving its insurmountable reputation and high-quality products, is being preyed upon by those selling poor-quality merchandise and making exorbitant profits." (Doc. 68 at 17; *see* Doc. 69 ¶ 5 ("Plaintiff has expended great amounts of time, money, and effort advertising and promoting its trademarks globally, including throughout the United States and in this District. As a result of these investments and its widespread success, Plaintiff has developed considerable goodwill and a reputation for the highest quality products. Plaintiff has continuously used its trademarks to distinguish its OtterBox® products, as well as uphold this reputation.")).

Remedies available at law are inadequate to compensate for the injury to Plaintiff's reputation and goodwill. *See 3M Co.*, 2023 WL 3481608, at *6. "A defaulting defendant may be presumed to be willing to continue their infringement of a mark." *Id*. And here, despite the filing of this suit, Defendant's distribution of counterfeit OtterBox products continued, with it shipping thirteen infringing cases to Plaintiff after the filing of this lawsuit. (Doc. 69 ¶ 21). "Thus, there is no guarantee that monetary damages will suffice to protect Plaintiff's [marks] moving forward. As such, a permanent injunction is likely necessary to remedy Plaintiff's injury." *3M Co.*, 2023 WL 3481608, at *6.

There is no hardship to Defendant in enjoining it from continuing to infringe Plaintiff's marks. Rather, "it is generally accepted that an infringer cannot claim hardship due to the loss of ability to offer its infringing product." *Id*. Thus, the balance of hardships is in Plaintiff's favor. Finally, the public interest would be served by the grant of a permanent injunction because "[t]he public has an interest in receiving the products that they think they are receiving." *Id.*; *Otter Prods.*, *LLC*, 2024 WL 3878285, at *7.

Accordingly, Plaintiff is entitled to the requested permanent injunction. Defendant, and its agents, servants, employees, and all other persons in privity or acting in concert with it are hereby permanently enjoined and restrained from:

a) using any counterfeit or infringement of the Plaintiff's Registered Trademarks to identify any goods not authorized by Plaintiff;

b) counterfeiting or infringing the Plaintiff's Registered Trademarks by importing, manufacturing, distributing, selling, offering for sale, advertising, promoting, displaying any products bearing any simulation, reproduction, counterfeit, or copy of the Plaintiff's Registered Trademarks;

c) using any simulation, reproduction, counterfeit, or copy of the Plaintiff's Registered Trademarks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiff;

c) making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public,

  or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by Defendant are in any way associated or connected with Plaintiff;

d) engaging in any other conduct constituting an infringement of the Plaintiff's Registered Trademarks, of Plaintiff's rights in, or to use or to exploit, said trademark, or constituting any weakening of Plaintiff's names, reputations, and goodwill.

## **CONCLUSION**

  For the foregoing reasons, Plaintiff's motion for a default judgment is GRANTED. Specifically, the motion is granted to the extent Plaintiff is awarded: (1) statutory damages in the amount of $875,000; and (2) a permanent injunction barring Defendant from any further infringement of Plaintiff's marks, as set forth herein.

  Plaintiff's counsel is directed to send a copy of this Memorandum Opinion and Order and the Judgment to Defendant.

  The Clerk of the Court is respectfully directed to enter Judgment in favor of Plaintiff in accordance with the terms of this Memorandum Opinion and Order and close this case.

                SO ORDERED:

Dated: White Plains, New York
     July 28, 2025

                   PHILIP M. HALPERN
                   United States District Judge